UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MATTHEW REDDING,

    Plaintiff,

v.                                                                    Case No:   2:17-cv-714-FtM-DNF

NANCY BERRYHILL, ACTING
COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____

## AMENDED OPINION AND ORDER[1]

Plaintiff, Matthew Redding, seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI"). The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed a joint legal memorandum setting forth their respective positions. For the reasons set out herein, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

    **I.**    **Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision**

    **A. Social Security Act Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in

---

[1] The previous Opinion and Order (Doc. 20) contained an incorrect date in the signature block. This Amended Opinion and Order has been entered to indicate the correct date, February 22, 2019. No other changes have been made.

death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The impairment must be severe, making the claimant unable to do his previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382(a)(3); 20 C.F.R. §§ 404.1505-404.1511, 416.905-416.911.

**B. Standard of Review**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405 (g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate support to a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Martin v. Sullivan*, 894 F.2d 1329, 1330 (11th Cir. 2002); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). However, the District Court will reverse the Commissioner's decision on plenary review if the decision applied incorrect law, or if the decision fails to provide sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). The Court reviews de novo the conclusions of law made by the Commissioner of Social Security in a disability benefits case. Social Security Act, § 205(g), 42 U.S.C. § 405(g).

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At step one, the claimant must prove that he is not undertaking substantial gainful employment. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001), *see* 20 C.F.R. § 404.1520(a)(4)(i). If a claimant is engaging in any substantial gainful activity, he will be found not disabled. 20 C.F.R. § 404.1520(a)(4)(i).

At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments. *Doughty*, 245 F.3d at 1278, 20 C.F.R. § 1520(a)(4)(ii). If the claimant's impairment or combination of impairments does not significantly limit his physical or mental ability to do basic work activities, the ALJ will find that the impairment is not severe, and the claimant will be found not disabled. 20 C.F.R. § 1520(c).

At step three, the claimant must prove that his impairment meets or equals one of impairments listed in 20 C.F.R. Pt. 404, Subpt. P. App. 1; *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(iii). If he meets this burden, he will be considered disabled without consideration of age, education and work experience. *Doughty*, 245 F.3d at 1278.

At step four, if the claimant cannot prove that his impairment meets or equals one of the impairments listed in Appendix 1, he must prove that his impairment prevents him from performing his past relevant work. *Id*. At this step, the ALJ will consider the claimant's RFC and compare it with the physical and mental demands of his past relevant work. 20 C.F.R. § 1520(a)(4)(iv), 20 C.F.R. § 1520(f). If the claimant can still perform his past relevant work, then he will not be found disabled. *Id*.

At step five, the burden shifts to the Commissioner to prove that the claimant is capable of performing other work available in the national economy, considering the claimant's RFC, age, education, and past work experience. *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(v). If

the claimant is capable of performing other work, he will be found not disabled. *Id*. In determining whether the Commissioner has met this burden, the ALJ must develop a full and fair record regarding the vocational opportunities available to the claimant. *Allen v. Sullivan*, 880 F.2d 1200, 1201 (11th Cir. 1989). There are two ways in which the ALJ may make this determination. The first is by applying the Medical Vocational Guidelines ("the Grids"), and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004). Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he is not capable of performing the "other work" as set forth by the Commissioner. *Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).

### C. Procedural History

Plaintiff filed an application filed an application for a period of disability and DIB and an application for SSI on April 11, 2012, alleging disability beginning March 6, 2012. (Tr. 179-88). His application was denied initially and upon reconsideration. (Tr. 60-105). After holding an administrative hearing on August 13, 2013, Administrative Law Judge Troy M. Patterson ("the ALJ") entered a decision on November 6, 2013, finding that Plaintiff was not disabled. (Tr. 21-59). Plaintiff requested the Appeals Council to review the ALJ's decision, but the Appeals Council denied review. (Tr. 1-6).

Plaintiff then filed a civil action in the United States District Court for the Northern District of Alabama. (Tr. 416-22). The District Court issued an order reversing the Commissioner's decision and remanding the case for a new hearing. (Tr. 423-35). After holding a second hearing on July 27, 2016, the ALJ issued a second decision on September 30, 2016, denying Plaintiff's application for benefits. (Tr. 346-63, 368-93). Plaintiff requested review of the ALJ's decision, but the Appeals Council declined to assume jurisdiction. (Tr. 339-45). After relocating to Naples,

Florida, Plaintiff initiated the instant action in the Middle District of Florida by Complaint (Doc. 1) dated December 22, 2017.

**D. Summary of the ALJ's Decision**

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 6, 2012, the alleged onset date. (Tr. 351). At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the cervical and lumbar spine; and history of fracture and fusion in the left distal radius and forearm. (Tr. 351). At step three, the ALJ found that through the date last insured, Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 352).

Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can never climb ladders, ropes or scaffolds; occasionally climb ramps/stairs, balance, stoop, kneel, crouch and crawl; occasionally reach overhead with the bilateral upper extremities; occasionally handle and finger with the left non-dominant upper extremity; and should avoid vibrations and work hazards.

(Tr. 352). At step four, the ALJ found that Plaintiff is unable to perform his past relevant work as an insulation installer. (Tr. 356).

At step five, the ALJ found that considering Plaintiff's age, education, work experience and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed. Relying on the testimony of a vocational expert, the ALJ found that Plaintiff could perform the work requirements of such jobs as warehouse checker, bakery racker, and hand bander. (Tr. 357). The ALJ concluded that Plaintiff was not under a disability from

March 6, 2012, the alleged onset date, through September 30, 2016, the date of the decision. (Tr. 19).

## II. Analysis

Plaintiff raises two issues on appeal: (1) whether substantial evidence supports the reasons the ALJ gave for rejecting Plaintiff's testimony; and (2) whether the ALJ erred by failing to provide good cause for rejecting the opinion of Dr. Tejedor-Velilla. The court will address each issue in turn.

### a) Whether substantial evidence supports the reasons the ALJ gave for rejecting Plaintiff's testimony.

Plaintiff argues that the reasons the ALJ gave for rejecting Plaintiff's testimony are not supported by substantial evidence. (Doc. 18 p. 14). Plaintiff contends that the record contradicts the ALJ's assertion that there were no objective medical findings to corroborate Plaintiff's subjective complaints of pain. (Doc. 18 p. 14). Further, Plaintiff argues that the ALJ overstated Plaintiff's activities of daily living and improperly drew a negative inference from Plaintiff's purported "conservative" medical care because the record shows that Plaintiff could not afford more aggressive treatment options. (Doc. 18 p. 14). In response, Defendant argues that the ALJ properly considered Plaintiff's subjective statements, together with other evidence, in assessing Plaintiff's RFC. (Doc. 18 p. 18).

The Eleventh Circuit three-part pain standard that applies whenever a claimant asserts disability through testimony of pain or other subjective symptoms requires (1) evidence of an underlying medical condition and either (2) objective medical evidence confirming the severity of the alleged pain arising from that condition, or (3) that the objectively determined medical condition is of such a severity that it can be reasonably be expected to cause the alleged pain. *Foote*

*v. Charter*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Kelly v. Apfel*, 185 F.3d 1211, 1215 (11th Cir. 1999). After considering claimant's subjective complaints, the ALJ may reject them as not credible, and that determination may be reviewed for substantial evidence. *Marbury v. Sullivan*, 957 F.2d 837 (11th Cir. 1992). If the objective medical evidence does not confirm the severity of the alleged symptoms, but indicates that the claimant's impairment could reasonably be expected to produce some degree of pain and other symptoms, the ALJ evaluates the intensity and persistence of the claimant's symptoms and their effect on his ability to work by considering the objective medical evidence, the claimant's daily activates, treatment and medications received, and other factors concerning functional limitations and restrictions due to pain. *See* 20 C.F.R. § 404.1529.

In this case, the Court finds that substantial evidence supports the ALJ's determination that Plaintiff's statements regarding the intensity, persistence, and functionally limiting effects of his alleged symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. 353). In his decision, the ALJ thoroughly discussed the medical records and other evidence, in evaluating Plaintiff's subjective statements. (Tr. 351-57). The objective medical findings from the record support the ALJ's determination that Plaintiff's subjective complaints of disabling symptoms and limitations were not consistent with the evidence. As noted by the ALJ, regarding Plaintiff's neck and back pain, a lumbar MRI performed in April 2013 showed minimal bulge at the L2-4 vertebral levels and encroachment of the bilateral foramina at the 14-5 vertebral level but was otherwise unchanged. (Tr. 316). Moreover, as noted by the ALJ, many of Plaintiff's physical examination results were within normal limits, but the following limitations were noted on occasion: tenderness to palpation of the lumbar spine with positive straight leg raises bilaterally, limited hip range of motion, muscle spasm, minimal right leg limp and limited squat. (Tr. 292-93,

305-22, 540-88). While Plaintiff had difficulty walking on his heels, he did not have difficulty walking on his toes, and he never demonstrated any gross motor or sensory deficit in the bilateral lower extremities. (Tr. 305-22, 540-88). Furthermore, as noted by the ALJ, while Plaintiff alleged his pain was at an 8/10 level, there were multiple occasions where Plaintiff stated his pain was 0/10 after treatment. (Tr. 355, 556, 581). Thus, Plaintiff's treatment history and the unremarkable objective findings indicate that treatment generally controlled his alleged symptoms, which further undermines his subjective complaints of disabling symptoms.

The Court rejects Plaintiff's argument that remand is necessary because the ALJ improperly considered Plaintiff's activities of daily living. Although not dispositive, a claimant's activities may show that her symptoms are not as limiting as she alleged. *See* 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i). Plaintiff testified that he is capable preparing light meals (sandwiches) and going to the grocery store with his sister. (Tr. 41, 354, 384). Additionally, he acknowledged that he regularly fixed things and tinkered in the garage. (Tr. 41, 354). He is also apparently able to do his own laundry and wash dishes three to four times per week, although he does not wash dishes now because his friend has a machine. (Tr. 354, 384). Plaintiff's activities are not indicative of the disabling limitations he alleged. The ALJ did not solely rely on Plaintiff's activities but considered them as one factor in his decision.

Furthermore, the Court finds no error in the ALJ's consideration of Plaintiff's lack of treatment. The ALJ noted that Plaintiff testified that he does not have insurance and his sister was helping him pay for his treatment but that she can no longer afford it and that he did not apply for EBT because of a prior criminal history and he was going to look into the insurance under the Affordable Care Act but heard it was too expensive. (Tr. 354). However, as the ALJ noted, Plaintiff barely had any visits to the ER despite alleging disabling pain. (Tr. 354). Thus, although Plaintiff

argues that he did not have money or insurance to pay for treatment, the record, as discussed by the ALJ, indicates that Plaintiff's lack of treatment was due to the fact that his condition was not as severe as he alleged, not due to a lack of money or insurance. (Tr. 354).

Plaintiff has failed to show that the ALJ committed reversible error in considering Plaintiff's subjective complaints. Accordingly, the Court affirms the ALJ's pain standard analysis on review.

### b) Whether the ALJ erred by failing to provide good cause for rejecting the opinion of Dr. Tejedor-Velilla.

Plaintiff argues that the ALJ erred by failing to accord appropriate weigh to the opinion of Plaintiff's treating primary care physician Nancy Tejedor-Velilla, M.D. (Doc. 18 p. 23). Plaintiff argues that the ALJ did not offer good cause for rejecting Dr. Tejedor-Velilla's opinion. (Doc. 18 p. 24). Plaintiff argues that the reasons provided by the ALJ for rejecting the opinion were not supported by substantial evidence, for example that Dr. Tejedor-Velilla's records showed only "conservative" treatment and that Dr. Tejedor-Velilla only saw Plaintiff twice before offering her opinion. (Doc. 18 p. 24). Further, Plaintiff argues that, contrary to the ALJ's claim, Dr. Tejedor-Velilla's opinion was not conclusory and not based on unduly on Plaintiff's subjective complaints. (Doc. 18 p. 25). In response, Defendant argues that the ALJ provided numerous reasons, supported by substantial evidence, according little weight to Dr. Tejedor-Velilla's opinion.

The record shows that starting in April of 2013, Plaintiff began treating with Dr. Tejedor-Velilla, a primary care physician. (Tr. 324). Plaintiff complained of back pain that was worse with prolonged sitting or standing. (Tr. 324). He also had a tingling pain in his right thigh and buttock after periods of walking. (Tr. 324). On examination, Dr. Tejedor-Velilla observed generalized tenderness and muscle spasms in Plaintiff's lumbar spine. (Tr. 324). The doctor diagnosed lumbar

radiculopathy and prescribed Tramadol. (Tr. 324). She gave Plaintiff information for social services so that he could apply for a voucher for a discounted MRI. (Tr. 325).

In July of 2013, Plaintiff followed up with Dr. Tejedor-Velilla for treatment of his back pain. (Tr. 312). The doctor noted that Plaintiff had an abnormal MRI of his lumbar spine; neck pain that was radiating to both shoulders, worse on the left than the right; and an old left forearm injury that caused nerve damage and permanent deformity. (Tr. 312). The doctor also was concerned about possible osteomyelitis (a bone infection) in Plaintiff's left arm. (Tr. 312). Dr. Tejedor-Velilla noted that Plaintiff did not have health insurance and could not afford to see a specialist. (Tr. 312). She prescribed tramadol and tizanidine (a muscle relaxant), and gave Plaintiff referrals to pain management, neurosurgery, and an orthopedic specialist. (Tr. 312-13).

During this visit, Plaintiff asked Dr. Tejedor-Velilla to fill out some paperwork for his disability claim. (Tr. 312). The doctor stated that she would complete those forms to the best of her ability. (Tr. 312). She also recommended that Plaintiff undergo an independent functional evaluation. (Tr. 312).

On the disability forms, Dr. Tejedor-Velilla noted that Plaintiff had a limited range of motion in his left shoulder, as well as pain in both shoulders. (Tr. 296). She restricted him to occasional overhead reaching, and frequent reaching below the shoulder level. (Tr. 296). Dr. Tejedor-Velilla also wrote that Plaintiff's left forearm fracture had weakened his grip and range of motion in that arm. (Tr. 297). She stated that Plaintiff could perform constant gross manipulation and frequent fine manipulation with the right hand, but only occasional gross manipulation and no fine manipulation with the left hand. (Tr. 297).

Dr. Tejedor-Velilla went on to note that Plaintiff had moderate neck pain and severe lower back pain. (Tr. 300-02). She restricted him to two hours of working per day, with no more than 30

- 10 -

minutes of sitting or standing at one time. (Tr. 300-02). Dr. Tejedor-Velilla also found that Plaintiff was limited to 10 pounds of lifting. (Tr. 300-02). The doctor stated that those limitations were due to "pain" and "weakness." (Tr. 302-03). The doctor found that Plaintiff could not bend, squat, crawl, climb, stoop, crouch, or kneel. (Tr. 303). Finally, Dr. Tejedor-Velilla filled out forms stating that Plaintiff met Listings 1.02 and 1.04. (Tr. 295, 299).

In his decision, after summarizing Dr. Tejedor-Velilla's opinion findings, the ALJ explained the weight he accorded the opinion as follows:

> This opinion receives little weight for the reasons discussed below. First, it is not well supported by her own clinical records, which show mildly abnormal objective findings. Further, she noted that the claimant had a reduced grip and sensory/reflex loss, which is not consistent with her records. In addition, the claimant received only conservative treatment from this physician and had only two visits. During the office visit the day she completed the medical source statement, Dr. Tejedor-Velilla noted that she would try to complete the disability questionnaire to the best of her ability, but that she recommended he undergo an independent functional evaluation (Exhibit 6F). This is a fairly brief treatment relationship for making these types of findings and she did not review any other records.
>
> Moreover, the opinion is not internally consistent. For example, the doctor opines that he meets the Listings at both 1.02b and 1.04. Her own definition of 1.02b provides that it is met when an individual is unable to perform fine and gross movements effectively with involvement in both upper extremities. Yet, Dr. Tejedor-Velilla later states that the claimant can constantly perform gross manipulation and frequently perform fine manipulation with the right hand. There is no indication of an impairment in the right upper extremity. Additionally, it is noted that the claimant suffered from only moderate pain in his upper extremities and the only problems listed by the doctor were limitation and pain in the shoulders. There was no indication of muscle atrophy, neurological changes, bursitis, impingement syndrome or shoulder instability.
>
> Similarly, Dr. Tejedor-Velilla concluded that the claimant had inability to ambulate effectively, but she later stated that he could walk for 2 hours total in an 8-hour workday. Additionally, she opined that the claimant could sit, stand and walk each for 2 hours total in an 8-hour workday, but he could only work for 2 hours total. Further, the opinion expressed is quite conclusory, providing very little explanation of the evidence relied

> on in forming that opinion. The doctor apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported.

(Tr. 355).

"The Secretary must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (citation omitted). The Eleventh Circuit has held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Winschel v. Commissioner of Social Security,* 631 F.3d 1176, 1178-79 (11th Cir. 2011). Without such a statement, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Id.* (citing *Cowart v. Shweiker,* 662 F.2d 731, 735 (11th Cir. 1981)).

The opinions of treating physicians are entitled to substantial or considerable weight unless good cause is shown to the contrary. *Phillips v. Barnhart,* 357 F.3d 1232, 1240 (11th Cir. 2004). The Eleventh Circuit has concluded that good cause exists when the: "treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Id.*

In this case, the Court finds that the ALJ provided good cause for rejecting Dr. Tejedor-Velilla's opinion. The ALJ noted that the opinion was not well supported Dr. Tejedor-Velilla's own clinical records, which show mildly abnormal objective findings. (Tr. 295-304, 540-88). The

ALJ noted that Dr. Tejedor-Velilla's found that Plaintiff had a reduced grip and sensory/reflex loss, which is not consistent with her records. (Tr. 312-26). In addition, as the ALJ noted, Plaintiff received only conservative treatment from this physician and had only two visits. (Tr. 312-26, 355). The ALJ noted that during the office visit the day she completed the medical source statement, Dr. Tejedor-Velilla noted that she would try to complete the disability questionnaire to the best of her ability, but that she recommended he undergo an independent functional evaluation. (Tr. 312). Thus, Dr. Tejedor-Velilla's own medical records fail to fully support her opinion.

The ALJ's further noted that Dr. Tejedor-Velilla's opinion is not internally consistent. For example, the doctor opines that Plaintiff meets the Listings at both 1.02b and 1.04. (Tr. 295-98). Her own definition of 1.02b provides that it is met when an individual is unable to perform fine and gross movements effectively with involvement in both upper extremities (Tr. 295-98). Yet, Dr. Tejedor-Velilla later states that the claimant can constantly perform gross manipulation and frequently perform fine manipulation with the right hand (Tr. 295-304). There is no indication of an impairment in the right upper extremity (Tr. 294-304). Additionally, it is noted that the claimant suffered from only moderate pain in his upper extremities and the only problems listed by the doctor were limitation and pain in the shoulders (Tr. 294-304). There was no indication of muscle atrophy, neurological changes, bursitis, impingement syndrome or shoulder instability. (Tr. 294-304).

The ALJ provided good cause for rejecting Dr. Tejedor-Velilla's opinion. Accordingly, the Court finds no error in the ALJ's finding that the opinion was only entitled to little weight.

### III. Conclusion

The decision of the Commissioner is **AFFIRMED**. The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on February 22, 2019.

*/s/ Douglas N. Frazier*
DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties